IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| VINCENT KHOURY TYLOR,<br><br>Plaintiff,<br><br>vs.<br><br>JOHN KEONI WELCH, an individual, dba JOHN KEONI WELCH REAL ESTATE BROKERAGE, and dba HOMES & CONDOS HAWAII; JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 1-10; DOE PARTNERSHIPS 1-10; and DOE ASSOCIATIONS 1-10,<br><br>Defendants. | ) CIVIL NO. CV13-00458 SOM-KSC<br>) (Copyright Infringement)<br>)<br>) MAGISTRATE JUDGE'S FINDINGS<br>) AND RECOMMENDATION TO<br>) GRANT PLAINTIFF'S MOTION<br>) FOR DEFAULT JUDGMENT<br>) AGAINST DEFENDANT<br>) JOHN KEONI WELCH, an<br>) individual, dba JOHN KEONI<br>) WELCH REAL ESTATE<br>) BROKERAGE, and dba HOMES &<br>) CONDOS HAWAII<br>)<br>)<br>)<br>)<br>) |

MAGISTRATE JUDGE'S FINDINGS AND
RECOMMENDATION TO GRANT PLAINTIFF'S
MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT
JOHN KEONI WELCH, an individual, dba JOHN KEONI WELCH
REAL ESTATE BROKERAGE, and dba HOMES & CONDOS HAWAII

Plaintiff VINCENT KHOURY TYLOR's ("Plaintiff") Motion

for Default Judgment Against Defendant JOHN KEONI WELCH, an

individual, dba JOHN KEONI WELCH REAL ESTATE BROKERAGE,

and dba HOMES & CONDOS HAWAII ("Defendant"), filed herein on

January 17, 2014, [Doc. #8], having come on for hearing before the Court,

the Honorable Kevin S.C. Chang, Magistrate Judge presiding, with J.

Stephen Street and Dane Anderson appearing for Plaintiff and there being no

appearance and no written submission by or on behalf of the Defendant, the

Court, after full consideration of Plaintiff's motion and the entire record

herein, makes the following Findings and Recommendation:

FINDINGS OF FACT

1.  This is an action for preliminary and permanent injunctive relief and

    damages against Defendant JOHN KEONI WELCH, an individual, dba

    JOHN KEONI WELCH REAL ESTATE BROKERAGE, and dba

    HOMES & CONDOS HAWAII ("Defendant") for copyright

    infringements in willful violation of the United States Copyright Act, 17

    U.S.C. §§ 101 et seq. and for violations of the Digital Millennium

    Copyright Act ("DMCA"), 17 U.S.C. §1202.  [Doc. # 1 ¶ 4].

2.  This Court has jurisdiction over the subject matter of this action under

    28 U.S.C. §§ 1331 and 1338(a).  Venue is proper in this district under 28

    U.S.C. §§ 1391(b) and (c) and 28 U.S.C. § 1400(a).  [Doc. # 1 ¶¶ 5-6].

3.  Plaintiffs filed their Complaint herein on September 10, 2013.  [Doc. #

    1].

4.  Defendant was personally served on September 21, 2013, and the Proof

    of Service was filed as Document No. 5 in this action.  Based upon the

service date of September 21, 2013, Defendant's Answer to the

Complaint was due on October 15, 2013.

5. The Clerk of the Court entered a default against Defendant on October

   16, 2013.  [Doc. # 6-1].

6. Defendant is doing business in the State of Hawaii as a real estate agent

   and/or broker and is doing business as JOHN KEONI WELCH REAL

   ESTATE BROKERAGE and as HOMES & CONDOS HAWAII.  [Doc.

   # 1 ¶ 7].

7. Defendant manages and controls a commercial web page on

   Facebook.com, at https://www.facebook.com/HawaiiBroker, to advertise

   and promote his services as a real estate agent and/or broker and to

   encourage users of his commercial Facebook.com web page to navigate

   to his commercial website, http://www.oahurealtors.net/, to obtain more

   information on Defendant's business and his contact information, or

   navigate to his other commercial web page on Facebook.com, at

   https://www.facebook.com/pages/Homes-Condos-

   Hawaii/124763550969786, which is also used to advertise and promote

   Defendant's business.  [Doc. # 1 ¶ 8].

8. Defendant manages and controls a commercial web blog on

   MySmartBlog.com, at http://johnwelch.mysmartblog.com/, to advertise

and promote his services as a real estate agent and/or broker, which is accessible from his commercial website, http://www.oahurealtors.net/, where viewers can "connect" with Defendant by clicking on a provided hyperlink to be directly routed to Defendant's web blog to obtain more information on Defendant and his business.  [Doc. # 1 ¶ 9].

9.  Defendant manages and controls a commercial web page on Twitter.com, at https://twitter.com/oahurealtors, to advertise and promote his services as a real estate agent and/or broker and to encourage readers or followers of his Twitter.com commercial web page to navigate to his commercial website, http://www.oahurealtors.net/, which is prominently displayed against the cover photo background of his Twitter.com commercial web page, to obtain more information on Defendant's business and his contact information.  [Doc. # 1 ¶ 10].

10.  Defendant manages and controls a Google+ commercial web page on plus.google.com, at https://plus.google.com/117014939946102307356, to advertise and promote his services as a real estate agent and/or broker and to encourage readers or followers of his Google+ commercial web page to navigate to his commercial website, http://www.oahurealtors.net/, by clicking on the provided hyperlink, to

obtain more information on Defendant's business and his contact

information.  [Doc. # 1 ¶ 11].

11. The five (5) photographic works, image nos.: "A-12-B LaniKai-girl";

"B-02 Punaluu Black Sand Beach"; "M-27 Big Beach-Maui"; "O-15

Waikiki Skyview"; and, "O-24 Makapuu" at issue in this case were

created by Plaintiff, a professional photographer who owns the

copyrights to the works.  The copyrights for the photographic works at

issue were registered with the United States Copyright Office as 1) VA

1-696-555, effective December 17, 2009, and supplemented by VA 1-

432-741; and, 2) VA 1-696-552, effective December 17, 2009, and

supplemented by VA 1-432-820.  [Doc. # 1 ¶ 13 & Doc. # 1-1].

12. Plaintiff incurred substantial time and expense in creating the

photographic works at issue, and Plaintiff licenses the photographic

works at issue for commercial and other uses.  [Doc. # 1 ¶ 15].

13. In mid-2013, Plaintiff learned that Defendant was using the five (5)

photographic works at issue commercially, a total of at least thirteen

(13) times, on Defendant's Facebook.com commercial web page,

MySmartBlog.com commercial web blog, Twitter.com commercial web

page, and Google+ commercial web page without obtaining licenses or

consent from Plaintiff, thus violating the exclusive rights of Plaintiff as

the copyright owner to reproduce, adapt, display, distribute, and/or create derivative works under 17 U.S.C. § 100 et. seq.  [Doc. # 1 ¶ 16 & Doc. # 1-2].

14. Each of Plaintiff's copyrighted photographic works at issue, where they are legitimately available, bear Plaintiff's copyright management information in the form of a "Vincent K. Tylor" signature at the bottom, corner of each photographic work.  [Doc. # 1 ¶ 17].  Defendant intentionally removed or altered Plaintiff's copyright management information from the photographic works at issue for Defendant's commercial uses of those photographic works without Plaintiff's authority or the law, and/or knowingly distributed copies of the photographic works at issue with the copyright management information digitally removed, as an internet search of those photographic works using an internet search engine would have revealed a legitimate source of those photographic works for licensing with copyright management information included.  [Doc. # 1 ¶ 18 & Doc. # 1-2].

15. Plaintiff holds all rights, title and interest in the copyrights to the photographic works at issue, the use of which has not been licensed to Defendant.  [Doc. # 1 ¶ 25].

16. Defendant has misappropriated Plaintiff's copyrighted photographic works with knowledge that the photographic works at issue did not belong to Defendant and Defendant made no attempt to obtain permission or license from anyone.  Defendant's acts constitute willful copyright infringement under the United States Copyright Act, 17 U.S.C. §§ 101 et. seq.  [Doc. # 1 ¶ 26].

17. Defendant's unlawful use of copies of Plaintiff's original photographic works has diminished the value of the original photographic works by distributing and encouraging redistribution of the photographic works without identifying the photographic works as being the exclusive property of Plaintiff.  [Doc. # 1 ¶ 27].

18. Defendant's unlawful acts have been and are interfering with and undermining Plaintiff's ability to market Plaintiff's own original photographic works, thereby impairing the value and prejudicing the sale by Plaintiff of his own photographic works.  [Doc. # 1 ¶ 28].

19. Defendant, by his unauthorized appropriation and use of Plaintiff's original photographic works, has been and is engaging in acts of unfair competition, unlawful appropriation, unjust enrichment, wrongful deception of the purchasing public, and unlawful trading on Plaintiff's

goodwill and the public acceptance of Plaintiff's original photographic works.  [Doc. # 1 ¶ 30].

20. As a direct and proximate result of Defendant's wrongful acts, Plaintiff has suffered and continued to suffer lost profits and damages.  [Doc. # 1 ¶ 32].

21. Defendant has intentionally removed copyright management information and/or distributed copies of Plaintiff's photographic works at issue knowing that the copyright management information has been removed from Plaintiff's photographic works used on Defendant's commercial web pages without the authority of Plaintiff as the copyright owner, or the law, and knowing or having reasonable grounds to know, that the removal or distribution would induce, enable, facilitate, or conceal infringements of copyright.  [Doc. # 1 ¶ 38].

## CONCLUSIONS OF LAW

A.  To the extent that the foregoing findings of fact are more properly conclusions of law, they shall be treated as such, and, to the extent that the following are more properly findings of fact, they shall be treated as such.

B.  The Complaint alleges claims for copyright infringements, in violation of the United States Copyright Act, 17 U.S.C. § 101 et. seq., and claims

for removal or alteration of copyright management information, or distribution of copies of Plaintiff's photographic works absent his copyright management information, in violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1202.

C.  There are two elements to a claim for copyright infringement: a plaintiff must allege (1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original.  Funky Films, Inc. v. Time Warner Entm't Co., L.P., 462 F.3d 1072, 1076 (9th Cir. 2006); Pacific Stock, Inc. v. Pearson Edu., Inc., 2012 U.S. Dist. LEXIS 3337 (U.S.D.C. HI, Jan. 11, 2012) Copy. L. Rep. (CCH) P30, 186.  Plaintiff has pled facts to establish the necessary elements of copyright infringements.

D.  To establish the Digital Millennium Copyright Act violations, Plaintiff must establish that Defendant has committed acts prohibited under 17 U.S.C. § 1202(b), as follows:

> § 1202. Integrity of copyright management information
>
> (b)  Removal or Alteration of Copyright Management Information. — No person shall without the authority of the copyright owner or the law —
> (1) intentionally remove or alter any copyright management information
> . . .

> (3) distribute . . . copies of works . . . knowing that copyright management information has been removed or altered without authority of the copyright owner or the law,
>
> knowing, or . . . having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title.

Copyright management information includes the name of the author of the work, including information set forth on a notice of copyright, as well as identifying symbols referring to the copyright of the work or the terms or conditions for use of the work.  17 U.S.C. 1202(c).  Plaintiff has pled facts to establish the necessary elements of the Digital Millennium Copyright Act violations.

E.  "With respect to the determination of liability and the default judgment itself, the general rule is that well-pled allegations in the complaint regarding liability are deemed true."  Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002); see DIRECTV, Inc. v. Hoa Huynh, 503 F.3d 847, 854 (9th Cir. 2007); TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987); see also Fed. R. Civ. P. 8(b)(6). The entry of default conclusively establishes the facts as to liability, but not damages.  See Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977). While the court may conduct a hearing to determine

damages, see Fed. R. Civ. P. 55(b)(2), the court can rely on evidence submitted by Plaintiff.  See Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989).

F.    As a general rule, "any doubts as to the propriety of a default are usually resolved against the party seeking a default judgment." VonGrabe v. Sprint PCS, 312 F. Supp. 2d 1313, 1319 (S.D. Cal. 2004) (citing Pena v. Seguros La Comercial, S.A., 770 F.2d 811, 814 (9th Cir. 1985)).

G.    In determining whether to grant default judgment, the court should consider the following factors:

> (1) the possibility of prejudice to the plaintiff,   (2) the merits of plaintiff's substantive claim,   (3) the sufficiency of the complaint,   (4)   the sum of money at stake in the action;   (5)   the possibility of a dispute concerning material facts;   (6) whether the default was due to excusable neglect, and   (7)   the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Twentieth Century Fox Film Corp. v. Streeter, 438 F. Supp. 2d 1065, 1070 (D. Ariz. 2006) (quoting Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986)); see also Parr v. Club Peggy, Inc., 2012 U.S. Dist. LEXIS 24758 (D. Haw. Jan. 19, 2012).

H.   The Eitel factors favor Plaintiff:  (1) Defendant's failure to file an answer in this action prejudices Plaintiff's ability to obtain a prompt and efficient resolution; (2) Plaintiff has demonstrated that Defendant has violated Plaintiff's copyrights and has violated the DMCA; (3) Plaintiff's complaint sufficiently sets forth the elements to support the claims under the Copyright Act and the DMCA; and, (4) the amount of money at stake relative to the cost of continued litigation makes the matter appropriate for default judgment.

I.   Two of the seven factors are neutral because Defendant has not appeared in this action:  (1) the possibility of a dispute concerning material facts, and (2) whether the default was due to excusable neglect, however, any possible argument as to excusable neglect is implausible given the extended period of time that Defendant has failed to appear in the case.  Although the last factor, the strong policy favoring decisions on the merits, favors denial of the motion, on balance, the record strongly favors granting the default judgment.

DAMAGES

### Statutory Damages for Willful Copyright Infringements

J.   Pursuant to 17 U.S.C. § 504(c), "A plaintiff may elect statutory damages regardless of the adequacy of the evidence offered as to his

actual damages and the amount of the defendant's profits." Columbia Pictures Indus., Inc. v. Krypton Broad. of Birmingham, Inc., 259 F.3d 1186, 1194 (9th Cir. 2001) (citation omitted).  Plaintiff is entitled to an award of damages between $750.00 and $30,000.00 per work, and for a willful infringement, no more than $150,000.00 per work for Defendant's violation of the Copyright Act. 17 U.S.C. § 504(c)(1) and (2).

K.  In determining an amount of statutory damages for copyright infringements, district courts will generally consider: 1) the nature of the infringement; 2) the defendant's purpose and intent; 3) the profit that the defendant reaped, if any, or the expense that the defendant saved; 4) the revenue lost by plaintiff as a result of the infringements; 5) the value of the copyrights; 6) the duration of the infringements; 6) the defendant's continuation of infringement after notice or knowledge of copyright claims; and, 7) the need to deter this defendant and other potential infringers.  Sony BMG Music Entm't v. Tenenbaum, 719 F.3d 67, 69 (1st Cir. 2013) (quotations omitted); Cross Key Pub. Co., Inc., v. Wee Inc., 921 F. Supp. 479 (W.D. Mich. 1995) (considering infringer's refusal to obtain license; continued violation of copyright despite warning; and amount operator would owe under proper license); Cass

County Music Co. v. C.H.L.R. Inc., 896 F. Supp. 904 (E.D. Ark. 1995) (considering the amount of money the defendant saved, the amount the plaintiff lost, and the defendant's state of mind); Polygram Intern. Pub., Inc. v. Nevada/TGI, Inc., 855 F. Supp. 1314 (D. Mass. 1994) (citing deterrence as an additional factor).  Thus, while a plaintiff need not prove actual damages in order to receive statutory damages, statutory damages should bear some relationship to actual damages.  See Fitzgerald Pub. Co. v. Baylor Pub. Co., 670 F. Supp. 1133 (E.D.N.Y. 1987).

L.   In applying the factors in this case, the nature of the infringement consisted of a total of thirteen (13) different uses of Plaintiff's five (5) photographic works at issue, all of which served as commercial advertising for Defendant, and Defendant's purpose was to willfully infringe and conceal the infringements from Plaintiff and the public as shown by the intentional removal of Plaintiff's copyright management information in Defendant's uses of those photographic works.  The cost-savings that Defendant enjoyed and the revenue lost by Plaintiff equates to the amount that Defendant would have had to pay Plaintiff to license the photographic works for the manner in which they were used on Defendant's Mysmartblog.com, Facebook.com, Twitter.com, and Plus.google.com commercial web pages.  The value of each copyright in this case is high due

to the photographic works being professional images, and some of these infringements began as early as mid-2012.

M.   Plaintiff's standard licensing fees for the thirteen (13) uses of his five (5) photographic works at issue would have totaled $15,996.00, as detailed in his Declaration (plus $666.34 in State of Hawaii general excise tax, for a total of $16,662.34).

N.   Plaintiff determined his loss by calculating the license fee for each use of each photographic work at issue in the size used on Defendant's commercial Mysmartblog.com, Facebook.com, Twitter.com, and Plus.google.com web pages for the number of years used.

O.   Because of Defendant's default, Plaintiff's allegations of willful infringement should be taken as true.  In Warner Bros. Entertainment v. Caridi, 346 F. Supp. 2d 1068 (C.D. Ca. 2004), the plaintiff sought enhanced statutory damages after an entry of default judgment against defendants who had engaged in unauthorized copying and distribution of two movie "screeners" the plaintiff had loaned them for award consideration.  Id. at 1069-71.  The federal district court noted that, "[b]ecause of the entry of default, the allegations in [the plaintiff's] Complaint must be taken as true.  Thus, since [the plaintiff] alleged willful infringement, the Court must take [the plaintiff's] allegation of

willful infringement as true." Id. at 1074.  The court found that the

egregiousness of the conduct in that case was compounded by the

defendants' failure to proffer any defense, and warranted an award of

enhanced statutory damages of $150,000.00 per work.  Id.

P.  As in Warner Bros., the Defendant's conduct was clearly egregious.

The posting of Plaintiff's photographic works on his Facebook.com,

Twitter.com, and Plus.google.com commercial web pages has contributed

to widespread distribution of these photographic works absent

Plaintiff's copyright management information.  Defendant's

Twitter.com commercial web page, for example, had over 900

"followers" and 376 users "tweeted" back to Defendant's Twitter.com

commercial web page, resulting in potentially thousands of users

viewing Defendant's Twitter.com commercial web page with Plaintiff's

"O-15 Waikiki Skyview" photographic work featured absent Plaintiff's

copyright information.

Q.  Furthermore, the need to deter Defendant from committing further

acts of copyright infringements in the future as well as dissuade internet

users of committing similar conduct in the future are also significant

factors that weigh in on the amount of statutory damages.  The cavalier

disregard for Plaintiff's copyrights to the photographic works

demonstrates a need for the court to impose a heightened award of

damages.  Congress made it clear that heightened penalties are

necessary to dissuade such conduct, observing that "many computer

users are either ignorant that copyright laws apply to Internet activity,

or they simply believe that they will not be caught or prosecuted for

their conduct . . . [and] do not consider the current copyright

infringement penalties a real threat and continue infringing, even after a

copyright owner puts them on notice that their actions constitute

infringement and that they should stop the activity or face legal action."

Capitol Records, Inc. v. Thomas-Rasset, 692 F.3d 899, 908 (8th Cir.

2012) (quoting H.R. Rep. 106-216, at 3 (1999), 1999 WL 446444, at

*3).  And courts have squarely followed Congress's intention to make

an example out of willful infringers.  See, e.g., Venegas-Hernandez v.

Sonolux Records, 370 F.3d 183, 196 (1st Cir. 2004) ("A decision in an

infringement suit to increase the statutory rate based on a finding of

willfulness, like an upward departure from a sentencing guideline's

range, is a punitive measure meant to deter.").  The deterrent purpose of

statutory damages is important here to discourage future acts of

scofflaw.  Defendant made no attempt to obtain permission from

Plaintiff as the copyright owner for his infringing uses of the

photographic works, showing a complete disregard for copyrights. Moreover, as in <u>Warner Bros.</u>, the egregious conduct was compounded by Defendant's failure to bother to proffer any defense to the Complaint.

R.   Plaintiff elects to receive statutory damages for the willful infringements as to each of the five (5) photographic works at issue. Although Plaintiff is entitled to seek up to $150,000.00 per work for Defendant's willful infringements in this case, Plaintiff asks that the Court award statutory damages under 17 U.S.C. § 504(c)(1) for the willful copyright infringements in the amount of no less than $50,000.00, representing approximately three-times the standard licensing fees for the retroactive uses.  Given Defendant's willful conduct, the Court finds that Plaintiff's request for $50,000.00 is appropriate and reasonable.  The Court recommends that Plaintiff be awarded $50,000.00 in statutory damages under the Copyright Act.

<u>Statutory Damages for DMCA Violations</u>

S.   Additionally, Defendant intentionally removed or altered Plaintiff's copyright management information in the form of a "Vincent K. Tylor" signature and also knowingly distributed copies of Plaintiff's photographic works at issue with the copyright management

information removed or altered in his use for commercial purposes on his social media web pages.  Defendant's intentional, knowingly and egregious conduct is demonstrated by his willingness to post Plaintiff's photographic works with the copyright management information removed for other users to share or download, knowing that he did not have any authorization from Plaintiff as the copyright owner and that the postings would amount to widespread distribution on the social media websites among thousands of users, absent Plaintiff's copyright management information, where those users could easily share or promote Defendant's infringing postings of Plaintiff's photographic works.  Distributing Plaintiff's photographic works without his copyright management information among users of his social media commercial web pages, when Defendant could have easily located a legitimate source with copyright management information, also violates the 17 U.S.C. § 1202(b)(3) proscription against knowingly distributing Plaintiff's works or copies of his works without copyright management information.

T.        Pursuant to 17 U.S.C. § 1203(c), Plaintiff is entitled to an award of damages of no less than $2,500.00 for each violation of 17 U.S.C. § 1202 and no more than $25,000.00 for each violation.  <u>See</u> 17 U.S.C. §

1203(c)(3)(B).

U.     Based upon the entry of default, Plaintiff's allegations of

Defendant's removal of copyright management information from five

(5) of his photographic works or distribution of those works absent

Plaintiff's copyright management information on Defendant's social

media commercial web pages should be taken as true.  See Warner

Bros., 346 F. Supp. 2d at 1071.  Plaintiff is entitled to an award of

damages for six (6) total violations of the DMCA, because one (1) of

the five (5) photographic works at issue, "O-15 Waikiki Skyview," was

published on two separate social media outlets, Twitter.com and

Plus.google.com, absent Plaintiff's copyright management information in

Defendant's uses of that photographic work on each of those separate social

media websites, resulting in two (2) separate DMCA violations for that

photographic work.  Although Plaintiff may seek up to $25,000 for each

violation of 17 U.S.C. § 1202, he seeks no less than $30,000.00 for the

DMCA violations, which represents two-times the minimum total

statutory damages available for six (6) violations.  Plaintiff's request for

$30,000.00 in statutory damages for the DMCA violations is reasonable

under the circumstances.  This Court recommends that Plaintiff be

awarded $30,000.00 in statutory damages for the DMCA violations.

Attorneys' Fees and Costs

V.        Pursuant to 17 U.S.C. § 505, entitled "Remedies for

infringement:  Costs and attorney's fees," and 17 U.S.C. § 1203,

entitled "Civil Remedies," the Court in its discretion may allow the

recovery of full costs and reasonable attorneys' fees to the prevailing

party on the copyright infringement claims and the DMCA violations.

W.        Reasonable attorney's fees are generally based on the

traditional "lodestar" calculation set forth in Hensley v. Eckerhart, 461

U.S. 424, 433 (1983).  See Fisher v. SJB-P.D., Inc., 214 F.3d 1115,

1119 (9th Cir. 2000).  The court must determine a reasonable fee by

multiplying "the number of hours reasonably expended on the

litigation" by "a reasonable hourly rate." Hensley, 461 U.S. at 433.

Second, the court must decide whether to adjust the lodestar amount

based on an evaluation of the factors articulated in Kerr v. Screen

Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975), which have not been

subsumed in the lodestar calculation.  See Fisher, 214 F.3d at 1119

(citation omitted).  The factors the Ninth Circuit articulated in Kerr are:

> (1) the time and labor required,  (2)  the novelty and
> difficulty of the questions involved,  (3)  the skill
> requisite to perform the legal service properly,  (4)
> the preclusion of other employment by the attorney
> due to acceptance of the case,  (5)  the customary
> fee,  (6)  whether the fee is fixed or contingent,  (7)

> time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

Kerr, 526 F.2d at 70.  The subsumed factors taken into account in the "lodestar" calculation are: "'(1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, . . . (4) the results obtained,' Morales v. City of San Rafael, 96 F.3d 359, 364 n.9 (9th Cir. 1996) (quoting Cabrales v. County of Los Angeles, 864 F.2d 1454, 1464 (9th Cir. 1988), reinstated, 886 F.2d 235 (1989), cert. denied, 494 U.S. 1091, 110 S. Ct. 1838, 108 L. Ed. 2d 966 (1990)), and (5) the contingent nature of the fee agreement," City of Burlington v. Dague, 505 U.S. 557, 112 S. Ct. 2638, 2643, 120 L. Ed. 2d 449 (1992).  Once calculated, the "lodestar" is presumptively reasonable.  See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 483 U.S. 711, 728 (1987); see also Fisher, 214 F.3d at 1119 n.4 (stating that the lodestar figure should only be adjusted in rare and exceptional cases).

X.   In determining whether an hourly rate is reasonable, the Court considers the experience, skill, and reputation of the attorney requesting fees.  See

Webb v. Ada County, 285 F.3d 829, 840 & n.6 (9th Cir. 2002).  The

reasonable hourly rate should reflect the prevailing market rates in the

community.  See id.; see also Gates v. Deukmejian, 987 F.2d 1392,

1405 (9th Cir. 1992), as amended on denial of reh'g, (1993) (noting that

the rate awarded should reflect "the rates of attorneys practicing in the

forum district").  Although attorneys are required to provide evidence

that the rate charged is reasonable, see Jordan v. Multnomah County,

815 F.2d 1258, 1263 (9th Cir. 1987), this Court is better aware of the

prevailing rates in the community, having had the opportunity to review

fee requests of many attorneys.

Y.    The Court has determined that the appropriate award of attorneys' fees

and tax in this matter is Three Thousand Five Hundred and Fifty-Four

Dollars and Seventy Cents ($3,554.70) for Mr. Street and Three

Thousand Two Hundred and Ninety-Six Dollars and Eighty-Nine Cents

($3,296.89) for Mr. Anderson. The Court recommends a total award of

attorney's fees of $6,851.59.  Additionally, the Court recommends a

total award of costs of $454.16, as Plaintiff has requested.

### RECOMMENDATION

Based upon the foregoing findings of fact and conclusions of

law, it is hereby recommended that Default Judgment be entered in Plaintiff's favor and against Defendant and that Defendant pay to Plaintiff $50,000.00 in statutory damages for its copyright infringements, $30,000.00 for its DMCA violations, $3,554.70 in attorney's fees and tax for Mr. Street, $3,296.89 in attorney's fees and tax for Mr. Anderson, and costs in the amount of $454.16.

IT IS SO FOUND AND RECOMMENDED.

DATED:   Honolulu, Hawaii, March 10, 2014.



_____
Kevin S.C. Chang
United States Magistrate Judge


VINCENT KHOURY TYLOR v. JOHN KEONI WELCH, an individual, dba JOHN KEONI WELCH REAL ESTATE BROKERAGE, and dba HOMES & CONDOS HAWAII; CV13-00458 SOM-KSC
MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT JOHN KEONI WELCH, an individual, dba JOHN KEONI WELCH REAL ESTATE BROKERAGE, and dba HOMES & CONDOS HAWAII